## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **RICKY L. BLALOCK** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action File No.:** |
| **v.** | ) | |
| | ) | |
| **ALPHA PHI ALPHA** | ) | **JURY TRIAL DEMANDED** |
| **FRATERNITY, INC.** | ) | |
| **Defendant.** | | |

## COMPLAINT

COMES NOW Plaintiff in the above styled action to file this **Complaint** under 42 U.S.C. §§ 1981; 1985 and 1986 as the vehicle to vindicate his rights that have been violated by Defendant to this civil-rights action under Article IV of the United States Constitution, and the Constitution and laws of the State of Georgia. Plaintiff also claims Defendant violated his rights under state law. In further support of his **Complaint**, Plaintiff alleges the following:

## JURISDICTION AND VENUE

### 1.

Jurisdiction is proper under 28 U.S.C. §§ 1331, 1332, and 1343(a)(b) and on the supplemental jurisdiction of this Court to adjudicate claims arising under state

law pursuant to 28 U.S.C. § 1367. Venue is proper in this Court under U.S.C. § 1391(b) because at all times pertinent to this action, a substantial part of the events or omissions giving rise to Plaintiff's claim occurred within this District and Division of this Court.

## **PARTIES**

### **2.**

Plaintiff Ricky L. Blalock is a private Georgia citizen and resides in Fulton County. He is CEO and a founder of a multimedia company organized and licensed under the laws of Georgia operating in Fulton County. In addition, in Alpha Phi Alpha Fraternity Mr. Blalock is a:

a) 34-year member of the Fraternity with an unblemished record of service, who has never been lawfully sanctioned.

b) Fraternity Life Member since 1988 (#6431).

c) Former Editor-in-Chief of Fraternity's official organ and international journal, *The Sphinx* (6 years under three Fraternity general [international] presidents).

d) Past member, Fraternity's [International] Board of Directors (1988-1989).

e) Past chairman of Fraternity's and Southern Region's Committees on Constitution.

f) Past Recording Secretary of Eta Lambda Chapter in Atlanta, Georgia.

2

**3.**

Defendant Alpha Phi Alpha Fraternity, Inc., organized and established in 1906, is a foreign nonprofit corporation, headed by its General President Willis L. Lonzer III, who succeeded Immediate Past General President Everett B. Ward on or about January 1, 2021, and organized under section 50l(c)(7) of the United States Internal Revenue Code, with offices and agents doing business in Atlanta, Fulton County, Georgia, by and through its subsidiary legal entities and administrators: Alpha Phi Alpha Fraternity, Inc. Southern Region, headed by Regional Vice President (RVP) Cecil Howard and previously by immediate past RVP Kelsey L. Rushing; Alpha Phi Alpha Fraternity, Inc. Georgia District Association; and Alpha Phi Alpha Fraternity, Inc. Eta Lambda Chapter in Atlanta headed by Chapter President Louis Bates Jr. The Fraternity is a recipient of federal grant monies from the U.S. Department of Justice and therefore subject to and required to obey the laws, rules and regulations of the United States and the various states in which it operates, including Georgia. As the parent body of the aforementioned entities, the Fraternity, operates and supervises Regions, Districts and Chapters in the United States, Europe, Africa and the Caribbean. The Fraternity's parent body is known as the GENERAL ORGANIZATION, which includes all units of the General Organization including Alumni and College Chapters; General Officers; the Board of Directors; the Past General Presidents; Committees, Commissions and Foundations created by the

General Convention. The supreme governing body of the General Organization is the General Convention, and the Board of Directors may act in the General Convention's stead when the General Convention is not convening. Defendant Alpha Phi Alpha Fraternity may be served through Sean McCaskill, Interim Executive Director at 2313 Saint Paul St., Baltimore, Maryland 21218-5211.

## **FACTUAL BACKGROUND**

### **4.**

Plaintiff incorporates, restates and reaffirms the facts and assertions in Paragraphs 1 through 3 by reference, as if fully stated herein.

### **5.**

*Alpha Phi Alpha Fraternity Inc. Constitution and By-Laws* ("CBL") is a binding document and agreement between Alpha Phi Alpha Fraternity, Inc., and all of its members, and is the supreme law of the Fraternity comprising of a Constitution section and a By-Laws section. Each member and officer of the Fraternity take an Oath of Allegiance to uphold and obey this document and can be removed from office for violating same. *Roberts Rules of Order Newly Revised* ("RONR''") is the official parliamentary authority of the Fraternity.

*Alpha Phi Alpha Fraternity Inc. Official Membership Policy and Procedures Manual* ("Manual") is a binding document and agreement between Alpha Phi Alpha Fraternity, Inc., and all of its members, and "contains the official governing policy

guidance and regulations of Alpha Phi Alpha Fraternity, Inc., and provides a comprehensive overview of the operating policies and procedures that govern all aspects of Fraternity operations." *See* Manual preamble, Pg. 1.

The current version of the Manual was adopted by the Fraternity's Supreme Governing Body, the General Convention, at its 2017 General Convention in Baltimore, Maryland. As defined by the Fraternity parliamentary authority, RONR, the Manual is the organization's "standing rules" and any and all modifications to, waiving of, or amendments to the Manual must be adopted and approved by the General Convention. *See* RONR § 2 Standing Rules, L.3, L.20.

*Alpha Phi Alpha Fraternity Inc. Risk Management Handbook* ("Handbook") is a binding document and agreement between Alpha Phi Alpha Fraternity, Inc., and all of its members, and *inter alia*, the document that contains the Fraternity Code of Discipline and regulates the risk management program designed in part to govern membership-intake activities.

*Alpha Phi Alpha Fraternity Inc. Rules of Procedure For Appeals and Reinstatement Hearings* ("ROPARH") is a binding document and agreement between Alpha Phi Alpha Fraternity, Inc., and all of its members, and contains the official rules that govern the Region's Committee on Grievances and Discipline

("Committee") as promulgated in 2018, at the Southern Regional Convention in Memphis, Tennessee.

*Eta Lambda Chapter Alpha Phi Alpha Fraternity Inc. Constitution and By-Laws* ("ELCBL") is a binding document and agreement between Alpha Phi Alpha Fraternity, Inc., and all of its members of Eta Lambda Chapter, and is the supreme law of the Eta Lambda Chapter comprising of a Constitution section and a By-Laws section.

*The Sphinx* is the official organ of Alpha Phi Alpha Fraternity, Inc. and as such is the Fraternity's official publication of record for the promulgation of notices, rules and regulations, news and information by and about Alpha Phi Alpha Fraternity, Inc., its general organization and all units therein.

**6.**

On or about **March 27, 1987**, Mr. Blalock and Alpha Phi Alpha Fraternity, Inc., entered into a binding contractual relationship, when on said date, Plaintiff and Defendant *agreed* to admit, via initiation, Plaintiff into membership in the Fraternity, with both parties being bound by the Fraternity's *Constitution and By-Laws* and other such governing documents which constitute the Agreement between the Fraternity and its members. This *Agreement* was enhanced and Plaintiff's status augmented to *life* membership on or about **October 1, 1988**, when under the authority and signature of the Fraternity General President and Executive Director,

Defendant made Mr. Blalock a "duly designated life member of Alpha Phi Alpha Fraternity, Inc."

**7.**

On or about **November 12, 2018**, the Defendant published a false and defamatory statement on the Fraternity's international website and membership portal "AlphaNet," available to every Fraternity member in the world, stating that:

> **"Comments:**
>
> *11.12.18 = Brother Ricky L. Blalock (123225) is hereby placed on CEASE & DESIST, by the Southern Regional VP, Brother Kelsey L. Rushing, after a thorough investigation that found sufficient evidence with his participation in inappropriate behavior not befitting as an Alpha that serves as a violation of the both the IMDP Process and the Fraternity's Standing Orders. -DNJ."*

**8**.

However, at the time this information was posted on "AlphaNet," there had been no thorough investigation and no "initial allegation report" with "preliminary findings" forwarded "to the General President, the Executive Director, the General Counsel and the Regional Vice President ... "as required by Fraternity laws. Mr. Blalock had not received notice of any accusation, allegation or charge, nor had he had any conversation with the Rapid Response (Investigation) Team (RRT), or any District or Chapter official to offer any defense of the accusations *he knew nothing* about.

**9.**

Shortly after the libel action of Defendant on November 12, Plaintiff made one of several inquiries for written notice of accusation, including contacting the Regional Vice President Kelsey Rushing and the Fraternity General Counsel Daryl Parks, but Defendant still provided no written notice to Mr. Blalock.

**10.**

On or about **December 3, 2018**, then Fraternity Executive Director Jamie Riley informed Mr. Blalock 33 days after the November 5, 2018 (RRT Investigative initial mandatory reporting deadline) that he (Riley) had not received any preliminary findings from the Region or Regional Vice President Rushing, as required under Fraternity rules and governing documents.

**11.**

Fraternity rules and governing documents require a statute of limitation on all Cease-and-Desist investigations. They must end after 60 days if there is no preliminary finding or charge; and if properly extended absolutely no later than 120 days from commencement. Any preliminary findings or charges must be filed by day sixty; if there is no resolution of an allegation within 120 days, members on Cease and Desist "shall" return to *active* status.

**12.**

Defendant refused to enforce the Fraternity's laws, rules, policies, and

procedures (including the statutes of limitations) which would have reinstated Plaintiff to active status as early as, on or about, December 20, 2018, and no later than, on or about, **February 2, 2019**. Plaintiff filed a Grievance Hearing request with the Fraternity's Region Grievances and Discipline Committee ("Committee") seeking its intervention and recommendation to the Regional Vice President Kelsey Rushing.

### 13.

Plaintiff filed a request for the Regional Grievance Hearing by **March 11, 2019**, and was granted a hearing by Committee Chairman, Antonello Shawn Collins, to be held on **March 22, 2019**, at the Region's annual Regional Convention in Jackson, Mississippi. Plaintiff asked that the Committee review the Fraternity's governing documents, to wit, the Manual, CBL, RONR, and Handbook and recommend that the Defendant follow the laws, rules, policies and procedures of the Fraternity and reinstate Mr. Blalock.

### 14.

While awaiting the **March 22, 2019**, Regional Grievance Hearing, then Georgia District Director Benny G. Hand sent a private and confidential letter to Mr. Blalock on or about **March 13, 2019**, regarding the false allegation of "in appropriate" behavior, copying Eta Lambda Chapter President Louis Bates Jr.

### 15.

Fraternity rules require that *before* any member is formally suspended, he

must be notified by the Fraternity Executive Director of such suspension and/or suspension recommendation. *See* ROPARH § 4.10. Also, the member must first have received notice of any initial allegation(s) in order to provide for a defense of said allegation(s) from the very outset.

## 16.

Bates, in his official Fraternity capacity, read and broadcast, and allowed for the reading and broadcasting of the letter from Benny G. Hand to the entire Chapter at its **March 14, 2019** Chapter Meeting before dozens of members from across the Metro Atlanta region. These defamatory and illegal actions exposed Plaintiff to criticism and ridicule and injured and continues to injure him emotionally and socially.

## 17.

The true *facts of this episode* also evince that despite the aforementioned confidential, unofficial and unprivileged letter of suspension read aloud to the Chapter, no individuals had    testified or stated to any law-enforcement agency, nor any Fraternity, Region, or District investigator(s) that Plaintiff had done anything untoward that would define Plaintiff's actions as   sexual harassment, and thus Defendant violated state law and Fraternity policy and procedures.

## 18.

In consideration of the facts, *supra,* and that the statements and charges within

the private communication from Hand to Mr. Blalock were false, the actions by the Defendant at Eta Lambda Chapter inflicted *defamation per se* upon Plaintiff as defined by Georgia law. Defendant's actions also pierced the veil of privacy guaranteed to Plaintiff under common law. Defendant publicly placed Plaintiff in a false light with slanderous information.

**19.**

Eight days after the second act of defamation, on **March 22, 2019**, the Region's Committee on Grievances and Discipline held the Grievance Hearing requested by Plaintiff, as the aggrieved party, at the Fraternity's 2019 Southern Regional Convention in Jackson, Mississippi.

**20.**

Plaintiff offered in direct testimony at his Regional Grievance Hearing, *to wit*:

"1. Did the Southern Regional Vice President provide notice of a specific accusation or allegation against Brother Ricky L. Blalock (as he, the RVP, did provide other members of Eta Lambda); and did he do so "as expeditiously as possible by registered mail, return receipt requested, or by hand delivery" as required by the fraternity standing rules, specifically the *Manual[§ 6-2]* and the Fraternity's *Risk Management Handbook?[§ 2.2.3]*
**WAS THIS DONE? NO.**

2. On November 14, 2018, me, Brother Blalock requested in writing, of the RVP and copied several of his designees and the fraternity Executive Director, to know exactly of WHAT I was accused. Did the Southern Regional Vice President provide notice of a specific accusation or allegation even still after this request?
**WAS THIS DONE? THE ANSWER IS NO.**

3. As part of "providing due process" and "a system that provides fairness" in

investigations, as adopted by the General Convention into the *Risk Management Handbook, [Ch.2 § 2.2]* did the Region's Investigations (Rapid Response Team) Chairman, "within seventy-two (72) hours not to exceed five (5) days," (thus November 5, 2018), complete "the initial allegation report" and was it "forwarded to the General President, Executive Director, General Counsel and Regional Vice President," including: "a report of the preliminary findings" as required by the *Manual?[§ 6-5-a; § 5-b-vii]*

**WAS THIS DONE? THE ANSWER IS NO. As late as December 3, 2018, (33**

**days later) then Executive Director Jamie Riley, informed me, Brother Blalock, that he, Riley, had not been sent or received any preliminary findings from the Region or Regional Vice President.**

4.  Did the Cease-and-Desist end on or before December 30, 2018, sixty (60) days after the date of issuance, as required by the *Manual? [§ 6-3-a]*
**WAS THIS DONE? THE ANSWER IS NO.**

5.  At the end of the sixty (60) days, December 30, 2018, were recommendations (regarding Brother Blalock) from the Regional Vice President submitted to the General President, General Counsel and Executive Director for filing as required by the *Manual?[Id.]*
**WAS THIS DONE? THE ANSWER IS NO.**

6.  If an extension was required, did the Regional Vice President provide notice to Brother Blalock that the Cease-and-Desist Order had been extended an additional sixty days? And, did he, the RVP, provide said notice not later than five (5) days of the original Cease and Desist Order's expiration of December 30, 2018, (thus January 4, 2019), as required by the *Manual?[§ 6-3-a]*
**WAS THIS DONE? THE ANSWER IS NO.**

7.  At the January 2019 Alpha Phi Alpha Fraternity, Inc. Board of Directors Meeting, were recommendations regarding Brother Blalock, from the Regional Vice President submitted to the General President, General Counsel and Executive Director for filing (as he, the RVP, did regarding other Southern Region fraternity members including of Eta Lambda)?
**WAS THIS DONE? THE ANSWER IS NO.**

8.  Was there a "resolution of the allegation(s)" regarding Bro. Blalock "within one hundred and twenty (120) days from the date of the original Cease and Desist

Order" (thus February 27, 2019), as required by the *Manual?[§ 6-3-c]*
    **WAS THIS DONE? THE ANSWER IS NO.**

9.   Since Southern Region Counsel Warren "Billy" Young confirmed that there was "no resolution of the allegation(s)" regarding Bro. Blalock, "within one hundred and twenty (120) days from the date of the original Cease and Desist Order" (thus February 27, 2019), as required by the *Manual,* did the Southern Region and/or the RVP "return" Bro. Blalock "to active status" as required by the *Manual?[§ 6-3-c]*
    **WAS THIS DONE? THE ANSWER IS NO.**

10.  In this matter, and based upon the facts and evidence provided herein, did the Region and/or the RVP "provide for due process" and follow the Fraternity's official "Code of Disciplinary Procedures" and "establish a system that provides fairness for those accused of violating Fraternity policy," as adopted by the General Convention into the *Risk Management Handbook? [Chapter 2 § 2.2]*
    **WAS THIS DONE? THE ANSWER IS NO.**

11.  Finally, did the RVP and his designees uphold, obey and support, their "Oaths of Allegiance," the Fraternity "Code of Ethics;" and the *Constitution and By-Laws* requirements of "fairness" and "due process" as required by the constitution and the Fraternity's "Parliamentary Authority?"
    **WAS THIS DONE? THE ANSWER IS NO."**

## 21.

At and during the Blalock Regional Grievance Hearing, the Fraternity, did

not object to, reject, or deny any of the lawful and truthful testimony and allegations

from Plaintiff regarding the multiple violations of the Fraternity's laws, rules,

policies and procedures by the Region, the Regional Vice President and others.

A verbatim record of all Regional Grievance Hearings is required by Fraternity rules.

**22.**

The *complete* Investigation Report, which *was not shared* with Plaintiff prior to the Regional Grievance Hearing as required by the Fraternity's Constitution and By-Laws, Manual, and other governing documents, included three acts of defamation by Defendant. *To wit*: 1) Defendant published a libelous and damaging statement that Plaintiff was a "sexual predator;" 2) Defendant published a libelous and damaging statement that Plaintiff was "reckless" in reference to Plaintiff's trade, office and profession; and 3) Defendant's then Eta Lambda Chief of Staff Davion Lewis pronounced a slanderous and damaging statement that Plaintiff  was "reckless." These acts were unknown to Plaintiff prior to him obtaining a copy of the Investigation Report.

**23.**

At  the Regional Convention Final Business Session, Defendant's Southern Region officials, read aloud and publicly broadcast to the Regional Convention business session (in a room with approximately 1,500 to 2,000 people from across the country, including the seven states comprising the Southern Region) that Mr. Blalock was guilty of "sexual harassment" upon a candidate/aspirant, and stating Mr. Blalock's membership in Alpha Phi Alpha Fraternity, Inc., was to be "suspended" for "two years," and that Mr. Blalock's "appeal" of the suspension was denied.

**24.**

Prior to filing this lawsuit, Plaintiff asked for a retraction of the acts of libel and slander by Defendant.

**25.**

Plaintiff in an effort to *still* resolve the matter internally, sought justice at the Fraternity's highest court of justice, (its tribunal) the General Convention Committee on Grievances and Discipline (hereinafter "GCC").

**26.**

The GCC conducted Mr. Blalock's GCC Hearing along with a host of other cases on or about **July 24, 2019,** at the Fraternity's General Convention in Las Vegas, Nevada, and reported out to the General Convention assembled approximately 27 recommendations on disciplinary matters.

**27.**

After careful and thorough review and deliberation of all the facts and testimony, the GCC, as an arm of the Defendant, expressed *serious doubts* on the "sexual-harassment" charges and claims against Plaintiff, and then unanimously agreed with and found for Plaintiff, and recommended to the Fraternity (General Convention Delegates assembled) the rescinding of Defendant's unlawful suspension action, and to expunge this entire incident and all sanctions thereto from Plaintiff's fraternal record. The GCC cited as its reason for its serious doubts on the

veracity of the sexual-harassment and related charges lodged by Defendant, that the GCC found there was: 1) no credible evidence,  2) no proof of any violation of  the rules of the Fraternity, 3) no due process in Plaintiff's case and 4) *found Alpha Phi Alpha Fraternity, Inc. in nonconformity with (its own) rules* of the Fraternity.

## 28.

At the final business session in a ballroom with approximately 3,000 people from around the world, the Fraternity again defamed Plaintiff pronouncing and accusing him of **"sexual misconduct"** as it rejected the GCC's recommendation to exonerate Plaintiff.

## 29.

So, after exhausting all internal remedies, and realizing no relief from Fraternity, Plaintiff turned to the only other available place to find justice, an Honorable Court of Law.

## 30.

Since Plaintiff's filing of the initial lawsuit in 2019, **separate officers, agents, employees, members and others of the Defendant, across several units of the Fraternity's General Organization, have upon separate and multiple occasions**, conspired and retaliated against Plaintiff, interfering with, and attempting to prevent him from exercising his constitutional right to vindicate himself, his name and reputation. **On or about July 17, 2021**, at the Fraternity's General Convention in

Indianapolis, Indiana, Defendant harassed and intimidated Plaintiff. *To wit:* the Fraternity's chairman of its Convention Rules and Credentials Committee harassed and intimidated Plaintiff in a threatening fashion, on the floor of the Convention. After that attack, Plaintiff was then harassed by the Fraternity's sergeant at arms— *on direct orders of the Fraternity*.

## 31.

**On or about August 30, 2021**, Defendant unlawfully conspired and retaliated against Plaintiff for filing his defamation lawsuit. *To wit:* just days before Mr. Blalock was to testify in the Superior Court-pending matter, Eta Lambda Chapter's Board of Directors (Executive Committee) on a motion by Corresponding Secretary Robert Whittinham, seconded by former Southern Regional Vice President Ronald M. Natson, initiated a conspiracy and scheme designed to deter, by force, intimidation and threat, Plaintiff from freely, fully and truthfully testifying in the pending matter, with the ultimate mission of this unlawful interference to force Plaintiff to withdraw his lawsuit, by voting to suspend Mr. Blalock and revoke his membership if he refused to end his lawsuit.

## 32.

Days later, **on or about September 9, 2021**, Defendant continued the conspiracy with a *separate act in furtherance of the conspiracy* when Eta Lambda Chapter moved to ratify the Executive Committee's action. Without hearing from

Plaintiff whatsoever, and providing no notice of any violation of a Fraternity rule or policy, as required by Fraternity governing documents including ELCBL, a motion was made by former Southern Regional Vice President Ronald M. Natson and seconded by the Fraternity (international) General President's Senior Advisor Robert A. Willis Sr. This unlawful action was not only retaliatory, but it added to the ongoing emotional pain, suffering and humiliation Plaintiff has endured since 2018.

**33.**

Then, **on or about September 15, 2021**, the Fraternity came full circle with its conspiracy for the purpose of impeding, hindering, obstructing and defeating the due course of justice and Mr. Blalock's right to the equal protection of the laws and privileges and immunities of being a U.S. citizen, and a citizen of Georgia, with *an additional separate act in furtherance of the conspiracy*, when Defendant officially acted and removed Plaintiff's membership from Eta Lambda Chapter and transferred Mr. Blalock into a "general organization" category, which *inter alia* strips Plaintiff of his rights to serve as a delegate at conventions and deprives him of the most basic and fundamental rights and privileges of membership in and of the Fraternity. ***See Exhibit A.***

**34.**

In this instance of retaliation and unlawful removal and suspension from a Fraternity chapter, Defendant provided Plaintiff no notice that he had violated *any* rules, regulations, policies or procedures; no notice of a proposed suspension; no procedure that was fair and reasonable and carried out in good faith; no prior written notice of the suspension, no opportunity for Plaintiff to be heard, orally or in writing *ab initio* in the execution of the wrongful and conspiracy-ladened suspension of Mr. Blalock from Eta Lambda Chapter.

**35.**

While Mr. Blalock has suffered through this disenfranchisement, being unlawfully and wrongfully ousted from his chapter and his membership suspended, he still refused to withdraw or otherwise end his lawsuit. So, when that unlawful interference did not achieve the results the Defendant sought, the Fraternity took another remarkable attempt to force Mr. Blalock to withdraw or otherwise end his lawsuit. The Fraternity's (international) Board of Directors, *in an additional separate act in furtherance of the conspiracy*, met on or about **January 29, 2022** in closed and public session and after that meeting, on or about **February 1, 2022**, unlawfully suspended Mr. Blalock *again,* this time of his universal and worldwide rights of membership in Alpha Phi Alpha Fraternity, Inc. Defendant did so by directing Plaintiff to "cease and desist from engaging in any and all Fraternal

activities, including but not limited to attending and/or participating in official Fraternal meetings, Fraternal conventions, Omega [funeral rites] services, the Initial Membership Development Process [membership intake] ("IMDP"), wearing Fraternity paraphernalia, Fraternal committees or boards, and events in support of the Fraternity's national programs, special initiatives, and foundations. The Defendant further directed Plaintiff "to refrain from contacting, whether directly or indirectly, any general, regional, district, and/or chapter officers." *See Exhibit B.* This action is in direct violation and contravention of the laws of Georgia, federal law, and the Fraternity's rules, policies and procedures, and other governing documents. This wanton action, *inter alia*, banished Mr. Blalock worldwide as a member of the organization. It was after this extrajudicial civil-rights violation and act in furtherance of the Fraternity's conspiracy, that Plaintiff sought relief from this Honorable Court.

## COUNT I
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS AND OBSTRUCTION OF JUSTICE IN VIOLATION OF THE KU KLUX KLAN ACT AND 42 U.S.C § 1985 (2)

### 36.

Plaintiff incorporates, restates and reaffirms the facts and assertions in Paragraphs 1 through 35 by reference, as if fully stated herein to support all allegations made in this Count.

**37.**

The Defendant by and through its **separate officers, agents, employees, members and others, across several units of the Fraternity's General Organization, have upon separate and multiple occasions** unlawfully conspired to interfere with Plaintiff's civil rights under law, in particular violating the Ku Klux Klan Act of 1871, by obstructing justice in the ongoing defamation lawsuit filed by Plaintiff in Fulton County Superior and State Courts, according to the facts incorporated to support this Count I. *It is not lost on the Plaintiff the irony and sad scenario that the Fraternity of Justice Thurgood Marshall and Martin Luther King Jr. is being sued for violation of the Ku Klux Klan Act.*

**38.**

First, in **August and September 2021**, the Defendant, in an effort to stop Plaintiff from testifying in the pending case (then in Fulton County, Ga. Superior Court) conspired for the purpose of impeding, hindering, obstructing and defeating the due course of justice in a scheme aimed at derailing Plaintiff's case against Defendant by unlawfully suspending and revoking Mr. Blalock's membership in his Atlanta (Eta Lambda) Chapter for Plaintiff's refusal to withdraw or otherwise end his lawsuit at Defendant's demand.

**39.**

Second, on **February 1, 2022**, the Defendant doubled down on its obstruction of justice with an extrajudicial act of suspension of Plaintiff's worldwide and universal membership in Alpha Phi Alpha Fraternity, Inc., because Mr. Blalock refused to withdraw or otherwise end his lawsuit. The first incidence of obstruction, *supra*, was piled on this instance with an *additional separate act in furtherance of the conspiracy*, with an even more pernicious sanction when the Defendant directed Plaintiff "to cease and desist from engaging in any and all Fraternal activities, including but not limited to attending and/or participating in official Fraternal meetings, Fraternal conventions, Omega [funeral rites] services, the Initial Membership Development Process [membership intake] ("IMDP"), wearing Fraternity paraphernalia, Fraternal committees or boards, and events in support of the Fraternity's national programs, special initiatives, and foundations. The Defendant further directed Plaintiff "to refrain from contacting, whether directly or indirectly, any general, regional, district, and/or chapter officers."

## COUNT II
## CONSPIRACY, RETALIATION AND INTIMIDIATION
## IN VIOLATION OF 42 U.S.C § 1985 (2)

### 40.

Plaintiff incorporates, restates and reaffirms the facts and assertions in Paragraphs 1 through 39 by reference, as if fully stated herein to support all allegations made in this Count.

### 41.

The Defendant by and through its **separate officers, agents, employees, members and others, across several units of the Fraternity's General Organization, upon separate and multiple occasions** unlawfully conspired to retaliate against and intimidate Plaintiff through invidiously animus action toward Plaintiff for exercising his constitutional and civil rights to file a defamation lawsuit against Defendant, as outlined in this Complaint to support this Count II.

### 42.

Specifically, in one of the several acts, Defendant conspired to deter, by force, intimidation, and threat, Mr. Blalock from prosecuting his defamation lawsuit in Fulton County Superior Court (and since, Fulton County State Court) when on or about **September 15, 2021**, Defendant in an *act in furtherance of the conspiracy*, unlawfully suspended and removed Mr. Blalock from his Atlanta (Eta Lambda)

Chapter membership for Plaintiff's refusal to withdraw or otherwise end his lawsuit at Defendant's demand.

**43.**

Furthermore, on or about **February 1, 2022**, the Defendant in *an additional separate act in furtherance of the conspiracy*, interfered again with Mr. Blalock's exercising his civil rights under law, pressuring him to withdraw or otherwise resolve his pending lawsuit, by unlawfully stripping Plaintiff of his universal and worldwide rights of membership in Alpha Phi Alpha Fraternity, Inc., by directing Plaintiff to "cease and desist from engaging in any and all Fraternal activities, including but not limited to attending and/or participating in official Fraternal meetings, Fraternal conventions, Omega [funeral rites] services, the Initial Membership Development Process [membership intake] ("IMDP"), wearing Fraternity paraphernalia, Fraternal committees or boards, and events in support of the Fraternity's national programs, special initiatives, and foundations. The Defendant further directed Plaintiff "to refrain from contacting, whether directly or indirectly, any general, regional, district, and/or chapter officers."

**44.**

This *constructive* suspension of Mr. Blalock, when there were no exigent circumstances requiring a suspension, *to wit*, there were no violations of any rules, regulations or governing documents by Plaintiff, and the Fraternity's illegal

suspension being enacted with no due process, no notice, and no hearing as required under Fraternity rules, policies and procedures and governing documents, is a crystal-clear prima facie case of retaliation and intimidation under state and federal law, the *Constitution of the United States* and the *Constitution of the State of Georgia.*

## COUNT III
## CONSPIRACY AND DEPRIVATION OF RIGHTS
## IN VIOLATION OF U.S. CONST. ART. IV § 2 AND 42 U.S.C § 1985 (3)

### 45.

Plaintiff incorporates, restates and reaffirms the facts and assertions in Paragraphs 1 through 44 by reference, as if fully stated herein to support all allegations made in this Count.

### 46.

The Defendant committed conspiracy, by and through its **separate officers, agents, employees, members and others, across several units of the Fraternity's General Organization, upon separate and multiple occasions** and deprived Plaintiff of his equal rights and civil rights, when Defendant attempted through force and intimidation to force Mr. Blalock to withdraw his pending Defamation lawsuit against Defendant—a right as a citizen of the United States Plaintiff is guaranteed under the *Constitution of the United States*, in particular Art. IV Section 2, and other federal civil-rights laws.

**47.**

As the facts incorporated herein to support this Count III show, Defendant engaged in and caused to be done, several acts in furtherance of Defendant's conspiracy, causing Plaintiff to be deprived of freely exercising his rights and privileges of a citizen of the United States, *inter alia*, Plaintiff's right to sue, be a party, give evidence, and enjoy the full and equal benefit of all laws and proceedings. Over and above, Defendant's conspiracy and acts in furtherance thereof trampled on Plaintiff's equal privileges and immunities under the law, resulting in serious injury to him in his person.

**COUNT IV**
**DISCRIMINATION AND IMPAIRMENT OF CIVIL RIGHTS**
**IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1991**
**AND 42 U.S.C § 1981**

**48.**

Plaintiff incorporates, restates and reaffirms the facts and assertions in Paragraphs 1 through 47 by reference, as if fully stated herein to support all allegations made in this Count.

**49.**

Defendant unlawfully discriminated against Plaintiff in the execution of discipline measures meted out during the course of an unlawful suspension, which began in 2018 through 2020 of Plaintiff's membership in Alpha Phi Alpha Fraternity, Inc. *To wit*, Defendant ordered a two-year suspension of Mr. Blalock,

when other similarly situated members (who like Mr. Blalock, were provided no due-process and were found to have no credible evidence against them) were re-instated and their records expunged.

**50.**

Defendant unlawfully discriminated against Plaintiff during and as a result of the disciplining-hearing process in 2019, at the Fraternity General Convention in Las Vegas. *To wit*, Defendant upheld the recommendation of its highest fact-finding tribunal, the General Convention Committee on Grievances and Discipline, *in 25 of the approximately 27 cases* heard in July 2019, at the General Convention in Las Vegas. However, Defendant refused to uphold the tribunal's recommendation in Mr. Blalock's case. The Fraternity treated Mr. Blalock differently—simply because Defendant did not like the tribunal's recommendation that Mr. Blalock was innocent of all charges, due to Defendant's lack of due process and that there was no credible evidence in Mr. Blalock's case *ab initio*.

**51.**

In the course of executing what are discriminatory disciplinary measures, and deemed unlawful by Georgia and Fraternity law, the Defendant violated a contractual relationship with Plaintiff, who as a U.S. citizen is guaranteed equal rights under law, including the right to make and enforce contracts, and be "protected against impairment by nongovernmental discrimination."

## COUNT V
## WITNESS TAMPERING AND INFLUENCING WITNESSES IN VIOLATION OF CRIMINAL PROVISIONS OF 18 U.S.C § 1512 AND O.C.G.A. § 16-10-93

### 52.

Plaintiff incorporates, restates and reaffirms the facts and assertions in Paragraphs 1 through 51 by reference, as if fully stated herein to support all allegations made in this Count.

### 53.

Defendant by and through its **separate officers, agents, employees, members and others, across several units of the Fraternity's General Organization, upon separate and multiple occasions** engaged in and committed (federal) **criminal witness tampering** in violation of federal law, codified in 18 U.S. Code § 1512. *To wit*, Defendant, as part of its overall conspiracy to force Mr. Blalock to withdraw or otherwise end his lawsuit against Defendant, *supra,* knowingly used intimidation, and threatened Plaintiff, attempting to influence, delay, and prevent Mr. Blalock's testimony in an official proceeding during the due course of justice of his defamation lawsuit against Alpha Phi Alpha Fraternity, Fraternity, Inc., et. al., in, on or about the months of July, August and September 2021, and then again in February 2022.

**54.**

Furthermore, Defendant by and through its **separate officers, agents, employees, members and others, across several units of the Fraternity's General Organization, upon separate and multiple occasions** also engaged in and committed (federal) **criminal witness tampering** in violation of federal law, as part of its overall conspiracy to force Mr. Blalock to withdraw or otherwise end his lawsuit against Defendant, *supra,* by knowingly and corruptly persuading or attempting to persuade other persons to engage in misleading conduct toward Plaintiff with intent to influence, delay, or prevent the testimony of Mr. Blalock in proceedings of the aforementioned lawsuit.

**55.**

Defendant by and through its **separate officers, agents, employees, members and others, across several units of the Fraternity's General Organization, upon separate and multiple occasions** engaged in and committed (Georgia) **criminal witness influencing** in violation of state law, codified in O.C.G.A. § 16-10-93. *To wit*, Defendant, as part of its overall conspiracy to force Mr. Blalock to withdraw or otherwise end his lawsuit against Defendant, *supra,* did act with the intent to deter a witness (Mr. Blalock) from testifying freely, fully, and truthfully in the *Blalock v. Alpha et al.* matter in Fulton County Superior Court (and now in State Court). Inasmuch as Mr. Blalock still refused to yield to this unlawful

tampering, Defendant further attempted to influence Plaintiff and in the course of the activity caused injury and damage to Plaintiff in his person and property when Defendant officially and unlawfully suspended Mr. Blalock in September from his Chapter membership and then from the Fraternity worldwide and universally in February 2022.

**56.**

The unlawful acts of the Defendant outlined in this Count V plainly describe *criminal* conspirative conduct in violation of federal law and Georgia law, and go hand-in-glove with the civil conspiracies Defendant has inflicted on Plaintiff as outlined throughout this Complaint in violation of 42 U.S.C. § 1985 among other provisions of state and federal law.

**COUNT VI**
**EQUAL RIGHTS UNDER LAW — BREACH OF CONTRACT,**
**THE DUTY OF GOOD FAITH AND ORDINARY CARE, AND FAIR**
**DEALING IN VIOLATION OF 42 U.S.C § 1981 AND**
**O.C.G.A. §§ 14-2-830, 14-2-842**

**57.**

Plaintiff incorporates, restates and reaffirms the facts and assertions in Paragraphs 1 through 56 by reference, as if fully stated herein to support all allegations made in this Count.

**58.**

Under longstanding federal civil-rights law, Plaintiff has the right to "make and enforce contracts," to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." Defendant, by its unlawful actions, *infra*, impaired Plaintiff's equal rights under law as codified in 42 U.S.C § 1981.

**59.**

The Fraternity entered into a contract with Plaintiff and the governing document titled Alpha Phi Alpha Fraternity, Inc, Constitution and By-Laws as well as all other governing documents that imposed binding contractual obligations and duties on the parties to this suit, binding obligations and duties that the Defendant wholly breached in violation of its *own* rules and Georgia law by not acting in good faith under by-laws *it* adopted, according to the facts incorporated to support this Count V. Those same facts also demonstrate a gross willingness and refusal to act in good faith under the Contract; for example, while knowing that the Fraternity's governing Constitution and By-Laws, Manual, and other governing documents required notice, investigation, a hearing and more, Defendant on two occasions, on or about **September 15, 2021** and then again on or about **February 1, 2022**, extrajudicially suspended Plaintiff's membership in Alpha Phi Alpha Fraternity (because he refused to withdraw or otherwise end his lawsuit against Defendant).

**60.**

These actions are blatant and callous civil-rights violations and breaches of contract that Mr. Blalock and the Fraternity entered into on or about **March 27, 1987**, *supra*.

**61.**

In addition to the **September 15, 2021**, and **February 1, 2022**, breaches and civil-rights impairments by the Fraternity, Defendant also knew that the Fraternity's governing Constitution and By-Laws, Manual, and other governing documents required the false charges (in the initial cease-and-desist investigation in 2018) be dismissed at both the 60-day and 120-day mark, Defendant refused to do so. By failing to follow the mandate which required immediate dismissal of all claims after the 60-day and 120-day mark, Defendant continued pursuit of these false charges after those contractual deadlines expired, which constitutes an illegal pursuit of charges as a matter of by-laws and constitutional law, evidencing extraordinary bad faith.

**COUNT VII**
**COMMISSION OF ULTRA VIRES ACTS**
**IN VIOLATION OF GEORGIA LAW O.C.G.A § 14-3-304**

**62.**

Plaintiff incorporates, restates and reaffirms the facts and assertions in Paragraphs 1 through

61 by reference, as if fully stated herein to support all allegations made in this

Count.

**63.**

When Defendant failed to provide *any notice*, *allegation or hearings*
regarding wrongdoing

or violation of any rules of the Fraternity on both suspension occasions, in

**September 2021,** and **February 2022**, it wantonly ignored and violated multiple

governing documents of Alpha Phi Alpha Fraternity, Inc., and in doing so violated

Plaintiff's due-process rights and while doing so, committed *ultra vires* acts, which

the Georgia General Assembly has empowered courts to "enjoin or set aside the

act[s]" and "if equitable … award damages for loss."

**64.**

Georgia law recognizes the ultra vires doctrine to assure protection of

members from organizational leaders that go rogue and commit ultra vires acts,

violate laws, rules and regulations as Defendant has done here.

**65.**

The blatant *inactions and omissions* of the Defendant *are actions* of purposive

violation of Fraternity's governing documents and Georgia law. More so, they are

*ultra vires* acts because in committing these inactions and omissions, Defendant put

into full force and effect powers it does not possess, nor have been given or inferred explicitly or implicitly by the Fraternity or Georgia law.

**66.**

Whilst wrongful and harmful, it could be determined that the Defendant's bad acts, *supra*, are merely negligent, *to wit*, if the Defendant's violations (such as no notice to Plaintiff as required by Fraternity rules, policies and other governing documents) were commenced out of sheer and absolute ignorance of the laws and rules alone. However, Defendant was forewarned and commanded by the Fraternity's Supreme Governing Body, the General Convention, *in 2015*, to correct "a breakdown in communication between the Fraternity and those that are subject to investigation, discipline and/or reinstatement."

**67.**

Taking into consideration the aforementioned 2015 order by the Fraternity's Supreme Governing Body and Defendant's insouciant regard for same, Defendant's actions in this instance, especially lack of notice as part of due process, fail to comply with the most basic constitutional requirements and rise from the level of gross negligence to perspicuous and actual malice *in toto.*

## COUNT VIII
## ILLEGAL MEMBERSHIP SUSPENSION
## IN VIOLATION OF GEORGIA LAW O.C.G.A. § 14-3-621

**68.**

Plaintiff incorporates, restates and reaffirms the facts and assertions in Paragraphs 1 through 67 by reference, as if fully stated herein to support all allegations made in this Count.

**69.**

Georgia law provides protection to members of nonprofit corporations from wrongful terminations or suspensions of their membership.

**70.**

When Defendant unlawfully suspended Plaintiff in **September 2021**, and then again in **February 2022**, it did so without any notice, hearing or otherwise procedure that was fair and reasonable under Georgia law or the Fraternity's own *required* rules, polices, laws and governing documents.

**71.**

As the evidence and facts herein aver, Defendant willingly, knowingly and maliciously violated its own rules, polices and laws, and Georgia law. Plaintiff was not given anything close to a "procedure that [wa]s fair and reasonable and … carried out in good faith."

## COUNT IX
## OFFICERS' STANDARDS OF CONDUCT IN VIOLATION OF GEORGIA LAW O.C.G.A. §§ 14-2-830, 14-2-841, 14-2-842

### 72.

Plaintiff incorporates, restates and reaffirms the facts and assertions in Paragraphs 1 through 71 by reference, as if fully stated herein to support all allegations made in this Count.

### 73.

Georgia law requires that officers and directors of nonprofit corporations obey and follow their governing documents and uphold standards of conduct.

### 74.

"Each officer has the authority and shall perform the functions set forth in the bylaws or, to the extent consistent with the bylaws, the functions prescribed by the board of directors or by direction of an officer authorized by the board of directors to prescribe the functions of other officers."

### 75.

"Standards of conduct for officers; presumption of good faith and ordinary care: An officer shall perform his or her duties in good faith and with the degree of care which an ordinarily prudent person in a like position would use under similar circumstances."

**76.**

Defendant's actions throughout the unlawful suspension episodes described *supra* show a clear-cut, all knowing and haughty disposition toward the rule of law— both Fraternity and Georgia law, which resulted in injury and harm to Plaintiff in his person. Not only did Defendant violate the law, but did so cavalierly with a conscious indifference to the impact on Plaintiff and his emotional wellbeing.

**COUNT X**
**ORDINARY NEGLIGENCE AND NEGLIGENT**
**MISREPRESENTATION**

**77.**

Plaintiff incorporates, restates and reaffirms the facts and assertions in Paragraphs 1 through 76 by reference, as if fully stated herein to support all allegations made in this Count.

**78.**

Defendant repeatedly and consistently violated Georgia law, federal statutes, and the Fraternity's governing Constitution and By-Laws, Manual, rules, policies and other governing documents and these violations constitute negligence, including ordinary negligence, gross negligence and *negligence per se*. No reasonable, like-minded person who would thus have command over all the relevant policies, procedures, By-Laws, and Constitutional mandates would

37

have acted such as Defendant acted in this case. Defendant breached its obligations and duties owed to Plaintiff and said breach was both the direct and proximate cause of injury in the form of pain and suffering experienced by Plaintiff.

## COUNT XI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### 79.

Plaintiff incorporates, restates and reaffirms the facts and assertions in Paragraphs 1 through 78 by reference, as if fully stated herein to support all allegations made in this Count.

### 80.

With no notice whatsoever to respond to a motion brought up at a Chapter Meeting, Alpha Phi Alpha Fraternity, Inc, informed Plaintiff on or about **September 15, 2021**, that his membership was revoked in the Eta Lambda Chapter of the Fraternity because Plaintiff failed to immediately resolve his lawsuit against Defendant and individual Brothers which was then pending in the Superior Court of Fulton County, Georgia. As a result of not resolving this lawsuit, as demanded by the Fraternity, Plaintiff was suspended and his membership in the Eta Lambda Chapter was revoked.

### 81.

To add more harm, stress, pain, and insult to injury to the Plaintiff, the Defendant five months later, convened a meeting of its (international) Board of

Directors on or about **January 29, 2022**, and after that meeting, on or about **February 1, 2022**, extrajudicially suspended Plaintiff's worldwide and universal membership in Alpha Phi Alpha Fraternity (because he refused to withdraw or otherwise end his lawsuit against Defendant). This action *de facto* makes Plaintiff a "man without a country," in the Fraternity of which he has given more than 34 years of his life.

## COUNT XII
## PUNITIVE DAMAGES

### 82.

Because Defendant's unconstitutional conduct caused serious injury to Plaintiff and demonstrated deliberate indifference toward Plaintiff's constitutional right to be free, and enjoy all the privileges and immunities guaranteed to him as a U.S. citizen in the United States Constitution; and that the actions of Defendant was willful, wanton, and demonstrated that entire want of care which raises the presumption of a conscious indifference to consequences, consequently, Mr. Blalock is entitled to punitive damages and a Judgment against Defendant of no less than four-million ($4,000,000) dollars, "to punish [Defendant's] reprehensible conduct and to deter its future occurrence," and because the facts herein evince that "the defendant acted, or failed to act, with the specific intent to cause harm" to Plaintiff and "by clear and convincing evidence that the defendant['s] actions showed willful misconduct and malice.

## COUNT XIII
## PRELIMINARY AND PERMANENT INJUNCTION

### 83.

Plaintiff has no adequate remedy at law or otherwise for the harm and damage that has been and continues to be done to him because of the wrongful and unlawful suspension of his Fraternity membership due to unconstitutional and unlawful actions                    of                    Defendant.

Plaintiff suffers and continues to suffer immediate and irreparable harm as a result of the Defendant's improper, illegal and unconstitutional actions.

As a result of the foregoing, the Court should:

**1)** Immediately stay and restrain and preliminarily and permanently enjoin Defendant and its agents, officers, employees, members and others at all units of the Fraternity General Organization, and others thereof from implementing and applying to Mr. Blalock a membership suspension, sanction or any other such disciplinary action borne out of any of the unlawful actions taken by Defendant against Plaintiff on or about August 2021; September 2021 and February 2022; and order Defendant and its agents, officers, employees, members and others at all units of the Fraternity General Organization, and all officials and members thereof, to immediately and permanently restore Blalock's membership to "active status" with full and complete expungement of his fraternal record; and promulgate same to all

members of Alpha Phi Alpha Fraternity, Inc., in its normal electronic messaging method to its entire active membership.

**2)** Immediately stay and restrain and preliminarily and permanently enjoin Defendant and its agents, officers, employees, members and others at all units of the Fraternity General Organization and officials thereof from further implementing and applying any restrictions, abridgment, or other such violations of Mr. Blalock's rights within and without the Fraternity.

**3)** Immediately stay and restrain and preliminarily and permanently enjoin Defendant and its agents, officers, employees, members and others at all units of the Fraternity General Organization and all officials and members thereof from committing any further acts of retaliation, intimidation or retribution upon Mr. Blalock for filing this Complaint, and other Complaints Plaintiff has filed or may file in other federal or state courts of law.

## COUNT XIV
## ATTORNEY FEES AND COSTS OF LITIGATION

### 84.

Due to Defendant's bad faith and stubbornly litigious conduct, Plaintiff asks this Court to grant attorney fees, under 42 U.S.C. § 1988 and all other expenses he is entitled to recover under O.C.G.A. § 13-6-11, due to Defendant's causing Plaintiff unnecessary trouble and expense.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Mr. Blalock respectfully prays and requests a trial by jury and judgment of the Court against Defendant as follows:

**(a)** The process issue and service be had on Defendant;

**(b)** That judgment be granted in favor of Plaintiff against Defendant for the injuries of Plaintiff;

**(c)** That the Court issue a restraining order; preliminary and permanent injunction as referenced in COUNT XII;

**(d)** The Plaintiff recover damages, including for actual injury, *to wit,* deprivation and impairment of civil rights; personal humiliation; emotional stress and pain; mental pain, anguish and suffering as a result of Defendant's unlawful actions in an amount to be determined at trial but not less than four-million ($4,000,000) dollars;

**(e)** Plaintiff recover all costs of this litigation;

**(f)** That a jury trial be had on all issues so triable;

**(g)** That this Court restore Plaintiff's membership in Alpha Phi Alpha to the status it was on **September 1, 2018**, and that it order Defendant to expunge Plaintiff's fraternal record of any sanctions borne out of the Cease-and-Desist Investigation of 2018;

**(h)** That this Court enter and award such other and further relief to which Plaintiff may be entitled as a matter of law or equity, or which the Court so determines to be just and proper.

Respectfully submitted this 17th day of March, 2022.

<u>/s/ MARIO WILLIAMS</u>
Mario Williams
(Ga Bar No. 235254)

**HDR, LLC**
44 Broad Street NW Suite 200
Atlanta, GA 30303
P: 404-254-0442
F: 404-935-9391
mwilliams@hdrattorneys.com

<u>/s/ DAVID BETTS</u>
David Betts
(Ga Bar No. 055850)

**BETTS & ASSOCIATES**
44 Broad Street NW Suite 200
Atlanta, GA 30303
P: 404-254-0442
F: 404-935-9391
davidbetts@bettslaw.net
*Attorneys for Plaintiff*