## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **RICKY L. BLALOCK** <br> **and JOHN J. FUNNY** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:22-cv-01085-WMR** |
| | ) | |
| **ALPHA PHI ALPHA** | ) | |
| **FRATERNITY, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW**

Defendant Alpha Phi Alpha Fraternity, Inc. ("Alpha Phi Alpha" or the "Fraternity"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56, files this Motion for Summary Judgment With Incorporated Memorandum of Law requesting that all of Plaintiffs' claims be dismissed with prejudice.

## **Introduction**

Alpha Phi Alpha is the first intercollegiate Greek-letter fraternity established for African American men. Founded on December 4, 1906, at Cornell University in Ithaca, New York, the Fraternity has established chapters at numerous colleges and

1

universities, as well as established alumni chapters across the United States and around the world, including the Eta Lambda Chapter in Atlanta. Notable members of Alpha Phi Alpha include Martin Luther King, Jr., Thurgood Marshall, and Andrew Young.

Alpha Phi Alpha has a strong prohibition against hazing individuals interested in Fraternity membership. Within this context, the Fraternity disciplined Plaintiffs in 2018 for violating the Fraternity's rules against hazing and/or failing to timely report potential violations of the Fraternity's hazing policy. Specifically, the Fraternity suspended Plaintiff Blalock from the Fraternity for two years and suspended Plaintiff Funny for one year. Plaintiffs unsuccessfully challenged their disciplines through the Fraternity's internal appeals process, including to the General Convention where they lost the vote.

On December 16, 2019, Plaintiffs filed lawsuits in Fulton County Superior Court, alleging Alpha Phi Alpha and several other individual defendants defamed Plaintiffs during the investigation and their internal appeals. See Ricky L. Blalock v. Alpha Phi Alpha Fraternity, Inc. et al., Civil Action No. 2019CV330667; and John J. Funny v. Alpha Phi Alpha Fraternity, Inc. et al., Civil Action No. 2019CV330690. The parties engaged in discovery for almost two years.

On September 15, 2021, after conducting a local Chapter meeting and vote (in which both Plaintiffs participated), the Eta Lambda Chapter sent each Plaintiff an identical letter that removed them from the chapter until the lawsuits are resolved. It makes no sense to allow Plaintiffs to actively participate in Chapter events when, at the same time, they are suing the Fraternity, the region, the district, the chapter, and chapter members, for millions of dollars.  Indeed, as it turned out, Plaintiff Blalock had secretly recorded the Chapter meeting that preceded the vote to suspend him.   The Eta Lambda had the right to take action to protect its interests, and its chapter members' interests, in the midst of ongoing litigation brought by Plaintiffs.

On November 18, 2021, Plaintiffs dismissed their lawsuits without any advance notice.  However, they re-filed their lawsuits on December 14, 2021 – this time in Fulton County State Court – bringing claims for defamation, breach of contract, negligence and negligent misrepresentation, and intentional infliction of emotional distress. Ricky L. Blalock v. Alpha Phi Alpha Fraternity, Inc. et al., Civil Action No. 21EV007447; John J. Funny v.  Alpha Phi Alpha Fraternity, Inc. et al., Civil Action No. 21EV007459.  Those lawsuits remain pending.

On February 1, 2022, Alpha Phi Alpha, through its outside counsel, sent a letter to Plaintiffs' counsel that instructs Plaintiffs to cease and desist from engaging in all Fraternity activities until the lawsuits are resolved.  (Exh. 6)  Like the Eta

3

Lambda Chapter, Alpha Phi Alpha also had the right to take action to protect its interests, and its members' interests, in the midst of ongoing litigation brought by Plaintiffs.

As noted above, when Plaintiffs were previously disciplined, they appealed all the way to the Fraternity's "supreme governing body" – the General Convention – and they lost.  This time around, they apparently assumed their own brothers would vote against them again, so they skipped all internal avenues of appeal and, instead, are asking this Court to intervene for them.  On March 17, 2022, Plaintiff filed these federal lawsuits.  The Court subsequently dismissed most of Plaintiffs' claims, leaving only Counts VI (breach of contract), VII (ultra vires), XII (punitive damages), and XIV (attorneys' fees and costs). (Order, August 8, 2022, Doc. 26, p. 19)  Specifically, Plaintiffs claim the September 15, 2021 and February 1, 2022 letters breached various contracts and constituted ultra vires acts.[1]

As fully discussed below, Alpha Phi Alpha is entitled to summary judgment on all of Plaintiffs' remaining claims.

---

[1] Plaintiffs' original Complaints discussed earlier disciplinary actions taken against them that are unrelated to the September 15, 2021 and February 1, 2022 letters. Those disciplinary actions are not part of this case.

## Memorandum of Law

Plaintiffs' Initial Disclosures and Supplemental Interrogatory Responses (dated March 31, 2023) have narrowed this case to only two claims: (1) whether the September 15, 2021 and February 1, 2022 letters violated a contract between the Fraternity and them (specifically, the Constitution and By-Laws and the Official Membership Policy and Procedures Manual ("OMPPM")), and (2) whether those two letters violated governing documents (specifically, only the OMPPM) and therefore were ultra vires acts under Georgia law.

### 1. The Fraternity is Entitled to Summary Judgment on Plaintiffs' Breach of Contract Claims Based on the September 15, 2021 Letters (Count VI).

Alpha Phi Alpha is entitled to summary judgment on this claim for several reasons discussed below.

#### a. Plaintiffs' contract claims fail because the Constitution, By-Laws, and OMPPM are not contracts.

The Constitution and By-Laws are not contracts with Plaintiffs. They do not claim to be contracts, and do not state anywhere that they are contracts. Rather, they are internal governance documents that address governance issues, such as name, mission, objectives, organization, officers, responsibilities, taxes and so on. They

also do not grant Plaintiffs the right to bring any legal claims in court.[2]

The OMPPM is not a contract either.  It does not claim to be a contract, and does not state anywhere that it is a contract.  Instead, it states on the cover page that it its purpose "is to establish direction, goals and criteria to allow the Fraternity's administrative offices to provide superior service to the members and stakeholders." Establishing direction and goals is hardly a contract.  The OMPPM also does not grant Plaintiffs the right to bring any legal claims in court.

This issue also deserves broader consideration.  Plaintiffs accuse the Fraternity of breaching the Constitution, By-Laws or OMPPM, but next time it may be individual members of the Fraternity who are accused of breaching these documents.  When the shoe is on the other foot, the Fraternity cannot sue members for such "breaches" because these documents are not legally enforceable contracts. Rather, the Fraternity is limited to internal remedies for those breaches (as it did in 2018 for Plaintiffs' prior violations), just as Plaintiffs are limited to internal remedies in this case (discussed below).

---

[2] Bartley v. Augusta Country Club, Inc., 254 Ga. 144, 326 S.E.2d 442 (1985) is a Georgia Supreme Court case in which the Court held that "Appellant's rights, if any, are governed by the by-laws, which constitute the agreement between the corporation and its members." Id.  In that case, however, there was no discussion of whether or not the by-laws constituted a contract.  It appears the Court and the Parties assumed they were for purposes of that case.  In contrast, as noted above, the Fraternity disputes that its By-Laws are a contract.

For these reasons, Alpha Phi Alpha is entitled to summary judgment on Plaintiffs' claims the September 15, 2021 letters breached a contract with the Fraternity.

> **b. Plaintiffs' contract claims fail because the Eta Lambda Chapter acted in good faith when it issued the September 15, 2021 letters and did not violate the Constitution, By-Laws, or OMPPM.**

Judicial inquiry into the suspension of a member of an incorporated, private, social club is limited to a determination of whether the club has acted in good faith under the by-laws adopted by it. Bartley v. Augusta Country Club, Inc., 254 Ga. 144, 326 S.E.2d 442 (1985). The courts should not interfere with a club's authorized, good-faith exercise of discretion in disciplining members. Id.

The Eta Lambda Chapter had authority to take suspend Plaintiffs. The OMPPM states that "[e]ach Chapter shall have the power to discipline its members and to impose, as appropriate, the penalty of censure, fine or suspension." (Exh. 3, p. 70) On August 30, 2021, the Eta Lambda Board of Directors met and recommended suspending Plaintiffs from the Chapter until the state court lawsuits are resolved. (Exh. 1 (Board Meeting Minutes))

Specifically, the minutes state, "There was discussion on the Chapter Litigation brought on by Bro. John Funny and Bro. Rick Blaylock (sic). Bro. Bob Whittingham made a motion that Bro. John Funny and Bro. Rick Blaylock (sic) be

suspended from the Chapter until the lawsuits have been settled.  The motion was 2nd by Bro. Ron Natson.  After discussion, was approved, and would be brought to the General Body for a vote." Id.  The meeting minutes look correct to Plaintiff Funny, though he thinks additional items were also discussed. (Funny Dep. p. 22:1-13) (excerpts at Exh. 9)[3]

Plaintiff Funny was a Board member and attended the meeting. (Funny Dep. p. 15:2-3) During the meeting, one Board member asked Plaintiff Funny, "Can you talk about it?"  He responded, "On the direction of my counsel, I cannot discuss this case.  If you're interested in the case, there's a public document that you can go and pull and read the case." (Funny Dep. pp. 16:23-17:5 (meaning the testimony starts on page 16, line 23 and ends on page 17, line 5)) Plaintiff Funny remembers one Board member saying, "We don't need [Plaintiffs] in the chapter.  It's like they want a divorce, but they want to stay in the house.  No.  Put them out." (Funny Dep. p. 24:20-24)

On September 9, 2021, the Eta Lambda Chapter held a chapter meeting. (Exh. 2 (Chapter Meeting Minutes)) Among other things, the minutes state, "Bro. Ron Natson led a discussion on the Board's recommendation that the Eta Lambda

---

[3] Natson is a former President of the Eta Lambda Chapter. (Natson Dep. pp. 7:21-8:3 (excerpts at Exh. 11)

Chapter memberships of Brothers John Funny and Rick Blalock be suspended. Following the discussion, a motion was made by Bro. Ron Natson, and seconded by Brother Bob Willis to adopt the Board's recommendation to remove the active memberships of Brothers John Funny and Rick Blalock from the Eta Lambda Chapter until the lawsuits that they each have filed against the General Organization, Southern Region, Georgia District, Eta Lambda Chapter, and individuals brothers has been resolved, at which point they may request reinstatement." Id.

Plaintiffs attended this Chapter meeting (which was remote for all members). (Blalock Dep. pp. 36:14-19 (excerpts at Exh. 8); Funny Dep. p. 17:10) During the meeting, no Chapter members defended Plaintiffs. (Blalock Dep. p. 53:3-6; Funny Dep. p. 35:7-9) Plaintiff Funny made no effort to defend himself at the meeting. (Funny Dep. p. 32:12-24) Plaintiff Blalock secretly recorded the Chapter meeting. (Blalock Dep. pp. 37-38)

During the meeting, Natson read the part of The Official Membership Policy and Procedures Manual ("OMPPM") that states "[e]ach Chapter shall have the power to discipline its members and to impose, as appropriate, the penalty of censure, fine or suspension." (Blalock Dep. p. 43:14-18; Exh. 3 (copy of OMPPM)) Plaintiff Blalock believed he was being "suspended" based on the discussion at the Chapter meeting. (Blalock Dep. p. 58:11-25).

9

During the Chapter meeting, Plaintiff Funny remembers Plaintiff Blalock saying, "So if I'm being suspended, does that mean I don't need to be on this meeting on the Zoom?"  Natson responded, "Well, no.  You're a member now; but once the vote is taken and if it passes, you're out of the chapter." (Funny Dep. p. 34:13-19)

On September 10, 2021, the Chapter members received an email that contained a link to vote. (Exh. 4 (Email to members, plus the results email))  The email states, "We invite you to vote in this election for a motion to adopt the Board's recommendation to remove the active membership for Brothers Rick Blalock and John Funny from the Eta Lambda Chapter until the lawsuits that they have each filed against us has been resolved, at which point they may request for reinstatement." Id. Plaintiff Blalock never tried to contact Bates or any other officer of the Chapter to "say, hey, this e-mail for the vote uses the wrong word.  You guys made a motion to suspend Mr. Funny and me.  You need to at least get the e-mail wording right.  Please use the word 'suspend' and resend it." (Blalock Dep. p. 68:7-13).  Neither did Plaintiff Funny. (Funny Dep. p. 38:13-23)

The Chapter members voted to remove Plaintiffs from the Chapter until the lawsuits were resolved, by a vote of 41 in favor and 10 against. (Bates Dep. p. 20:22-25 (excerpts at Exh. 12)).  Plaintiffs were two of the "no" votes. (Blalock Dep. p. 66:7-8; Funny Dep. p. 37:22-25)

On September 15, 2021, Eta Lambda Chapter President Louis Bates sent each Plaintiff an identical letter that "remove[d]" them from the Chapter's active membership and "revoked" their membership from the Chapter and "moved it to the General Organization" until their state court lawsuits are "resolved," at which point they can apply for reinstatement.  (Exh. 5 (copies of both letters))[4]

The letter says, "If there are any questions concerning the actions taken by the Brothers of the Eta Lambda Chapter, please contact me at President@EtaLambda.org." (Exh. 5).  However, Blalock never contacted Bates or Natson to say the letter wrongly uses the words "remove" and "revoked" because it would have been "useless." (Blalock Dep. pp. 70:22-72:10)  Natson testified that the only way to remove Plaintiffs from the Eta Lambda Chapter was to suspend them. (Natson Dep. pp. 20:21-21:6)

Plaintiffs remain in good standing with the Fraternity, but not the Eta Lambda Chapter. (Natson Dep. pp. 11:2-3; 23:1-8)

It was the Eta Lambda Chapter's independent decision to suspend Plaintiffs. (Howard Dep. pp. 41:19-42:12 (excerpts at Exh. 10); Natson Dep. p. 35:17-21; Bates

---

[4] It is normal for some suspended members to be required to apply for reinstatement when their suspension ends. (Howard Dep. pp. 25:14-26:6; Natson Dep. p. 41:9-15) It means a members' reinstatement to "active status" in the Chapter again, from inactive status. (Howard Dep. p. 28:14-17)

Dep. p. 13:8-14)  Before the Chapter meeting (Howard Dep. p. 53:24), the Chapter
President (Bates) did tell the Regional Vice President (Howard) that the Chapter was
planning to suspend Plaintiffs. Id. at 38:10-22.

Bates explained to Howard that there was a general concern about the
members of the Chapter that there could be no conversation, no discussion about the
case altogether because members were afraid if they said anything or spoke out that
they would be sued and added as defendants in the case.  And because it was an
active case in litigation, then they decided they would suspend the Plaintiffs.
(Howard Dep. p. 44:4-15)

Howard explained to Bates that a Chapter has the right to suspend them and
then said, "Okay, well, you can move forward." (Howard Dep. pp. 45:1-5; 54:15-
21).  "That matter was resolved, in my opinion, right there," according to Howard.
Id. at 52:22-23.

The Eta Lambda Chapter could suspend Plaintiffs even though their state
court lawsuits did not violate a specific Fraternity rule. (Howard Dep. p. 56:3-17;
Natson Dep. pp. 23:15-24:14 (and also noting that Plaintiffs' state court lawsuits,
which included many details of internal Fraternity activities, violate their oath of
secrecy); Bates Dep. p. 35:14-17 (Plaintiffs' lawsuits violate their oath of secrecy,
as discussed at the Chapter meeting))

Plaintiffs nonetheless argue the Eta Lambda Chapter used the words "remove" and "revoke" in the letters to them, instead of "suspend," therefore breaching the OMPPM. This is form over substance. The Chapter President who sent the letters (Bates), the member who made the motion to suspend at the Chapter meeting (Natson), and the Regional Vice President over the Chapter (Howard), have all testified that those words ("remove" and "revoke") are synonymous with "suspend" in the context in which they were used. (Bates Dep. pp. 18:12-20:6; Natson Dep. pp. 20:21-22 and 45:18-24; Howard Dep. pp. 24:4 and 38:23-39:18).

For these reasons, Alpha Phil Alpha is entitled to summary judgment on Plaintiffs' breach of contract claim because the Eta Lambda Chapter acted in good faith when it issued the September 15, 2021 letters and did not breach the Constitution, By-Laws or OMPPM.[5]

### c. Plaintiffs' contract claims fail because internal Fraternity remedies are their exclusive remedies, which they intentionally refused to use.

Alpha Phi Alpha has the sole and exclusive right to determine what remedies are available to its members who have been internally disciplined and, as members

---

[5] Plaintiffs originally mentioned O.C.G.A. §§ 14-2-830 (duty of directors to operate in good faith; presumption of same) and 14-2-842 (same for officers) in connection with their breach of contract claims. As discussed herein, the Eta Lambda Chapter and Fraternity did operate in good faith. Plus, a breach of contract claim cannot be based on Georgia Code sections. Bartley (cited above) and its progeny provide the controlling standard of review.

of the Fraternity, Plaintiffs agreed to these exclusive remedies.  The Fraternity's Constitution and By-Laws do not provide any right for members to sue the Fraternity in court for disciplinary matters.  Instead, internal remedies are provided to members as the exclusive means to resolving disciplinary actions against them.  See Smooth Ashlar Grand Lodge (Compact) of F.&A.A. York Masons v. Odom, 136 Ga. App. 812, 815, 222 S.E.2d 614, 616 (1975) ("It is a well-settled rule, that, before resorting to the civil courts for redress, a member must exhaust all the remedies provided by the society by appeal or otherwise.")

Article I, Section 2.1.1, of the By-Laws states that Regional Vice Presidents "shall provide supervision for the activities of all chapters within their respective regions," and Section 2.1.2 states that "[t]hey shall settle controversies and misunderstandings within their regions." (Exh. 7)  If Plaintiffs believed (as they now claim) that there was some controversy or misunderstanding regarding the Eta Lambda Chapter's use of the words "revoke" and "remove," instead of "suspend," the Regional Vice President is the designated officer to resolve it.  However, Plaintiffs intentionally decided not to appeal to him because they believed it would be useless. (Blalock Dep. pp. 74:13-75:76; Funny Dep. pp. 46:3-47:5)  Plaintiff Blalock testified that the Fraternity members copied on the letters (Regional Vice President, Georgia District Director, Interim Executive Director, and the General

14

Counsel) were "apparently already involved and did nothing when they got this letter." (Blalock Dep. p. 76:4-6).  Their claims fail for this reason alone.

Next, if Plaintiffs had appealed, the Regional Vice President has testified that he believes Plaintiffs were properly suspended.  At that point, Article X, Section 2.3, of the By-Laws states the "suspended member shall have the right of appeal to the General Convention or, as appropriate, the General Board of Directors."  (Exh. 7)  However, Plaintiffs never appealed to the General Board of Directors or the General Convention.[6] (Blalock Dep. pp. 74:13-75:76)  Their claims fail for this reason too.

In sum, the Fraternity's Constitution and By-Laws do not provide any right for members to sue the Fraternity in court for disciplinary matters.  Instead, the Fraternity provides members with exclusive internal remedies to resolve disciplinary actions against them.  Alpha Phil Alpha is entitled to summary judgment on Plaintiffs' breach of contract claim because Plaintiffs failed to avail themselves of the internal remedies available to them, and those are the exclusive remedies available to them.

---

[6] The General Convention is composed of elected General Officers, the Past Presidents, the General Chairmen of Standing Committees, and delegates from Alumni and College Chapters. (Exh. 7, Section 3.1)  There are typically a few thousand such members at a Convention.

### d. Plaintiffs' contract claims fail because the General Convention is the supreme governing body, not this court or a jury.

Consistent with Alpha Phil Alpha's position that it provides exclusive internal remedies to members to resolve disciplinary matters,[7] Article II, Section 2 of the Constitution states that the General Convention is the "supreme governing body of the General Organization," which means that it is the final arbiter. As members of the Fraternity, Plaintiffs agreed the General Convention is the supreme governing body for determining whether the September 15, 2021 letters were appropriate, not this Court, a jury, or any other third-party. Therefore, Plaintiffs' breach of contract claims should be dismissed. The next General Convention will be held in July 2023 (the first one since the summer of 2021), so Plaintiffs could still appeal.[8]

### e. Plaintiffs' contract claims fail because the Eta Lambda Chapter sent the letters, not Alpha Phi Alpha.

Alpha Phi Alpha believes the Eta Lambda Chapter was well within its powers to suspend the Plaintiffs, as confirmed in the September 15, 2021 letters. However, Alpha Phi Alpha did not suspend the Plaintiffs, and it did not send the letters. The

---

[7] The Fraternity understands that members can file a lawsuit in court if they believe the Fraternity has violated a federal or state law. But that is not what this case is about. This case is about the Fraternity's own internal rules.

[8] On March 2, 2023, the Fraternity's Parliamentarian, Adrian Stratton, participated in a videoconference with Plaintiffs and explained they can still appeal the letters. He reiterated it during his deposition later that month.

Eta Lambda Chapter did so. There are hundreds of Chapters across the country and the world, and Alpha Phi Alpha does not monitor or approve such local chapter actions.

For these reasons, Alpha Phi Alpha is entitled to summary judgment on Plaintiffs' breach of contract claim based on the September 15, 2021 letters.

## 2. The Fraternity is Entitled to Summary Judgment on Plaintiff's Breach of Contract Claims Based on the February 1, 2022 letter (Count VI).

Alpha Phi Alpha is entitled to summary judgment on this claim for several reasons discussed below.

### a. Plaintiffs' contract claims fail because the Constitution, By-Laws, and OMPPM are not contracts with Plaintiffs

For the reasons already discussed above, the Constitution, By-Laws and OMPPM are not contracts.  Therefore, Alpha Phi Alpha is entitled to summary judgment on Plaintiffs' claim the February 1, 2022 letter breached a contract with the Fraternity.

### b. Plaintiffs' contract claims fail because Alpha Phi Alpha acted in good faith when it issued the February 1, 2022 letter and did not violate the Constitution, By-Laws, or OMPPM.

As discussed above, judicial inquiry into the suspension of a member is limited to a determination of whether the club has acted in good faith under the by-laws adopted by it, and the courts should not interfere with a club's authorized, good-

faith exercise of discretion in disciplining members.  <u>Bartley</u>, 254 Ga. 144.

There is no provision in the Constitution and By-Laws that the Eta Lambda Chapter breached by sending the February 1, 2022 letter to Plaintiffs.   On the contrary, the Fraternity had authority to send the letter.

Article X, Section 2.2 of the By-Laws states, "In the case of an offense against the General Organization, the General Board of Directors shall have the power to suspend the offending member . . . ."   Plaintiffs' state court lawsuits against the General Organization, its officers, units and some individual members, for millions of dollars, is an offense.   Next, Article X, Section 2.3 of the By-Laws, states, "The Regional Vice President shall have the authority to suspend a member."   And, Article III, Section 1.2 of the By-Laws states, "The General Counsel, with the approval of the General Board of Directors, shall have the sole authority to . . . defend . . . all legal actions [against the Fraternity] . . . ."

Here, the General Counsel spoke to the General Board of Directors, and as a result of his meeting with them in executive session, which is privileged, the Fraternity moved forward with sending the February 1, 2022 letter. (Howard Dep. p. 42:13-21)   "[G]eneral counsel engaged the board, and there was a general consensus that – that we move forward with the [February 1, 2022] cease-and-desist [letter]." (Howard Dep. p. 109:4-6).   The Regional Vice President (Howard)

18

provided a list of the General Board members (including himself) who voted in favor of sending the cease-and-desist letter, plus the General President did too. (Id. at 110:21-111:23)

The Fraternity's General President (Dr. Willis Lonzer) also testified that he approved the February 1, 2022 cease-and-desist letter, along with the other members of the General Board in executive session. (Lonzer Dep. pp. 27:10-22 and 28:9-11 (excerpts at Exh. 13))

Howard further testified, "I said, because Daryl Parks, in his capacity as general counsel of the organization, he provides legal guidance and strategy to move forward with cases in litigation.  And I rely upon that and all members of the board rely upon that.  So in his communication regarding instances or strategies he should engage, I'm going to support that and the members of the board are going to support that.  And that's what happened here." (Howard Dep. pp. 83:20-84:4)  Howard also testified, "What I do know is that because this matter was engaged in litigation that it was felt that [Plaintiffs] should not be actively involved in the fraternity until this matter was resolved." (Howard Dep. p. 99; 10-13)

Plaintiff Blalock agrees the General Board of Directors and the General Counsel had the authority to send Plaintiffs the February 1, 2022 letter. (Blalock Dep. p. 85:5-12)  The Court may recall that, a few months after Plaintiffs filed these

federal lawsuits, someone mailed a copy of the lawsuits to at least one member of the Fraternity, using an envelope with the seal and address of the Russell Building Courthouse.  If Plaintiff Blalock did it, that would be a violation of the February 1, 2022 letter (and would further justify the need for the cease-and-desist in the first place).  At his deposition, Plaintiff Blalock took the Fifth on all questions related to the envelope.

There is no provision in the OMPPM that the Fraternity breached by sending the February 1, 2022 letter to Plaintiffs.  On the contrary, Section 06-Discipline of the OMPPM states, "From time to time it may be necessary to interrupt the actions of a . . . member.  In such circumstances, a Cease and Desist Order may be issued and shall be defined as a formal letter sent by a Regional Vice President or his designee (on behalf of the Fraternity) that ceases all activity of a member."  As discussed above, that happened here; the Regional Vice President (Howard) approved sending the February 1, 2022 letter to Plaintiffs.

Plaintiffs have tried to argue that notice, investigation, and a trial should have been provided pursuant to Parts 1, 2 and 3 of Section 06 before the February 1, 2022 letter was sent.  Those Parts apply to alleged misconduct by members such as hazing and harassment.  Those Parts do not apply to the unique situation present here – members suing the Fraternity.  The OMPPM is silent on this unique situation.  Plus,

Plaintiffs' lawsuits with detailed allegations were already public filings, the Fraternity had already denied the allegations, discovery had already been conducted, and Plaintiffs had dismissed the lawsuits but then re-filed them, so they were still ongoing.  Point being, there was nothing to investigate.

In such a unique situation, the OMPPM, at the bottom of page 1 to the top of page 2, states, "In the event a matter or topic is not specifically addressed by a policy set forth herein, the Board (through the Executive Director) reserves the right to administer, direct and control the operation of the Fraternity in all matters under their jurisdiction in the absence of such a policy, subject to the Fraternity's Constitution and By-Laws." (Exh. 3)  The General Board of Directors properly did so by having the February 1, 2022 letter sent to Plaintiffs.

For these reasons, Alpha Phil Alpha is entitled to summary judgment on Plaintiffs' breach of contract claims because it acted in good faith by sending the February 1, 2022 letter and did not breach the Constitution, By-Laws or OMPPM.

### c. Plaintiffs' contract claims fail because internal Fraternity remedies are their exclusive remedies, which they intentionally refused to use.

As discussed above, Alpha Phi Alpha has the sole and exclusive right to determine what remedies are available to its members who have been internally disciplined and, as members of the Fraternity, Plaintiffs agreed to these exclusive remedies.  Article I, Section 2.1.1, of the By-Laws states that Regional Vice

21

Presidents "shall provide supervision for the activities of all chapters within their respective regions," and Section 2.1.2 states that "[t]hey shall settle controversies and misunderstandings within their regions."  If Plaintiffs believed the February 1, 2022 letter was improper, they should have appealed to the Regional Vice President. Their claims fail because they never did.

Next, if Plaintiffs had appealed, the Regional Vice President (Howard) has testified that he approved the February 1, 2022 letter being sent to Plaintiffs. (Howard Dep. p. 110:21-111:23)  At that point, Plaintiffs had the right of appeal to the General Convention or the General Board of Directors.  However, Plaintiffs never appealed to the General Board of Directors or the General Convention either. Their claims fail because they never did.

In sum, Alpha Phil Alpha is entitled to summary judgment on Plaintiffs' breach of contract claim because Plaintiffs failed to avail themselves of the internal remedies available to them, and those are the exclusive remedies.

### d. Plaintiffs' contract claims fail because the General Convention is the supreme governing body, not this court or a jury.

As discussed above, Article II, Section 2 of the Constitution states that the General Convention is the "supreme governing body of the General Organization," which means that it is the final arbiter (if Plaintiffs had appealed).  As members of the Fraternity, Plaintiffs agreed that the General Convention is the supreme

governing body for determining whether the February 1, 2022 letter is appropriate, not this Court, a jury, or any other third-party.   Therefore, Plaintiffs breach of contract claims should be dismissed.  (Again, the General Convention is being held in July 2023, so Plaintiffs could still appeal.)

### 3. The Fraternity is Entitled to Summary Judgment on Plaintiff's Ultra Vires Claim (Count VII).

Plaintiffs allege that Alpha Phi Alpha committed ultra vires acts under O.C.G.A. § 14-3-3-4 by failing to follow its own rules when it issued the September 15, 2021 and February 1, 2022 letters.  As discussed below, Alpha Phi Alpha is entitled to summary judgment on this claim for several reasons discussed below.

#### a. Plaintiffs' ultra vires claims fail because such claims cannot be based on a policy manual

The OMPPM is the only governing document on which Plaintiffs base their ultra vires claims.  However, there is nothing in O.C.G.A. § 14-3-304 that states an organization can commit an ultra vires act by not following an internal policy manual.  A policy manual is not the type of governing document that can form the basis of liability.  Therefore, Plaintiff's ultra vires claim fails.

#### b. Plaintiffs' ultra vires claims fail because the Eta Lambda Chapter and the Fraternity had the power to act and did so in good faith.

As already discussed above, the Eta Lambda Chapter acted in good faith and did not violate the OMPPM when it suspended Plaintiffs and sent them the

September 15, 2021 letters. Likewise, as already discussed above, the Fraternity acted in good faith and did not violate the OMPPM when it placed Plaintiffs on a cease-and-desist with the February 1, 2022 letter. Accordingly, Plaintiff's ultra vires claims should be dismissed.

### c. Plaintiffs' ultra vires claims fail because internal Fraternity remedies are their remedies, which they intentionally refused to use.

Georgia law allows a corporation's power to act to be challenged by a member, and the Court "may enjoin the act." O.C.G.A. § 14-3-304(c). When Plaintiffs come to this Court seeking injunctive relief, they must show up with "clean hands," having exhausted all internal remedies. They have failed to do so. Accordingly, Alpha Phi Alpha is entitled to summary judgment on Plaintiffs' ultra vires claims.

### d. Plaintiffs' ultra vires claims fail because the General Convention is the supreme governing body, not this court or a jury.

As already discussed above, the General Convention is the "supreme governing body of the General Organization," which means that it is the final arbiter on whether Eta Lambda Chapter or the Fraternity has the power to send the letters. Therefore, Plaintiffs' ultra vires claim should be dismissed.

**e. Plaintiffs' ultra vires claims fail as to the September 15, 2021 letters because the Eta Lambda Chapter sent the letters, not Alpha Phi Alpha.**

As discussed above, Alpha Phi Alpha did not send the September 15, 2021 letters. Accordingly, Alpha Phi Alpha is entitled to summary judgment on Plaintiffs' ultra vires claim based on the September 15, 2021 letters.

**4. The Fraternity is entitled to summary judgment on Plaintiffs' damages and attorneys' fees claims (Count XII and XIV).**

Plaintiffs are only seeking $330 in actual damages for membership fees paid in the 2021-2022 Fraternal year. However, as noted above, Plaintiffs remain members of the Alpha Phi Alpha General Organization; therefore, such damages are not appropriate and should be dismissed.

Punitive damages are not available in breach of contract cases. ServiceMaster Co., L.P. v. Martin, 252 Ga. App. 751, 757, 556 S.E.2d 517 (2001). Moreover, O.C.G.A. § 14-3-304 does not allow for punitive damages either. Plaintiffs' punitive damages claims should be dismissed for these reasons.

Next, as demonstrated above, Plaintiffs' claims should also be dismissed in their entirety and, without an underlying claim, Plaintiffs are not entitled to attorney's fees or punitive damages. See Gilmour v. Am. Nat. Red Cross, 385 F.3d 1318, 1324 (11th Cir. 2004).

## **Conclusion**

For all the reasons detailed above, Alpha Phi Alpha respectfully requests that its Motion for Summary Judgment be granted and all of Plaintiffs' remaining claims be dismissed with prejudice.

Respectfully submitted this 30th day of June, 2023.

/s/ *Todd Van Dyke*
C. Todd Van Dyke
Georgia Bar No. 723420
**JACKSON LEWIS, P.C.**
171 17th Street, NW, Suite 1200
Atlanta, Georgia 30363
Telephone: (404) 525-8200
Facsimile: (404) 525-1173
Todd.vandyke@jacksonlewis.com

**Counsel for Alpha Phi Alpha Fraternity, Inc.**

26

## <u>CERTIFICATE OF COMPLIANCE AND SERVICE</u>

I hereby certify that this filing complies with the requirements of Local Rules 7.1(D) and 5.1(C) (Times New Roman, 14 point) and that I have this day served a copy of the within and foregoing Motion for Summary Judgment with Incorporated Memorandum of Law upon counsel of record by CM/ECF.

So certified this 30th day of June, 2023.

<u>*/s/ Todd Van Dyke*</u>
Todd Van Dyke
Georgia Bar No. 723420

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **RICKY L. BLALOCK** <br> **and JOHN J. FUNNY** | ) <br> ) <br> ) |
| **Plaintiffs,** | ) <br> ) |
| **v.** | ) <br> ) |
| **ALPHA PHI ALPHA** <br> **FRATERNITY, INC.** | ) <br> ) <br> ) |
| **Defendant.** | ) <br> ) |
| _____ | ) |

Case No. **1:22-cv-01085-WMR**

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 30, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Plaintiffs' counsel.

David Betts
**BETTS & ASSOCIATES**
44 Broad Street NW, Suite 200
Atlanta, GA 30303

Mario Williams
**HDR, LLC**
44 Broad Street NW, Suite 200
Atlanta, GA 30303

*/s/ Todd Van Dyke*
Todd Van Dyke
Georgia Bar No. 723430